**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Crim No.: 22-cr-133 (CKK)** |
| | : | |
| | : | |
| **v.** | : | **VIOLATIONS:** |
| | : | |
| **HAIDER ALI,** | : | **18 U.S.C. § 371** |
| | : | **(Conspiracy)** |
| | : | |
| **Defendant.** | : | **18 U.S.C. § 1344** |
| | : | **(Bank Fraud)** |
| | : | |
| | : | **7 D.C. Code § 2506.01(b)** |
| | : | **(Unlawful Possession of a Large Capacity** |
| | : | **Ammunition Feeding Device)** |
| | : | |

**SUPERSEDING INFORMATION**

The United States Attorney for the District of Columbia charges that:

**GENERAL ALLEGATIONS**

At all times material to this Information, on or about the times stated below:

**Introduction**

1.     HAIDER ALI was a 36-year-old resident of the District of Columbia.

2.     United States Special Police LLC (USSP) was a Washington, D.C., limited liability company, with a registered address associated with a residence maintained and controlled by Arian Taherzadeh. Taherzadeh was the beneficial owner of USSP.

3.     On USSP's website, USSP was described as a private law enforcement, investigative, and protective service headquartered in Washington, D.C.  The website stated that USSP can provide law enforcement, protective services, and investigative services within a contracted jurisdiction. Taherzadeh and ALI represented themselves to law enforcement and others as agents and investigators with USSP.

4.      USSP was not associated or affiliated in any way with the United States

Government, nor has it ever done business with the United States Government, or the District of

Columbia including the United States Department of Homeland Security, and the District of

Columbia Metropolitan Police Department (MPD).

5.      Taherzadeh and ALI were not, and have never been, employees of the United States

Government or the District of Columbia.

6.      The Crossing was an apartment complex in the District of Columbia. The Crossing

was located at 949 First Street SE.

7.      HSA Holdings Inc., d/b/a US Limo World Inc. is a company incorporated in the

District of Columbia.  ALI was the registered agent and beneficial owner of US Limo World Inc.

### COUNT ONE
**(Conspiracy)**

8.      The allegations contained in paragraphs 1 through 6 are realleged as fully set forth

herein.

9.      Beginning as early as June 2020, and continuing as late as, April 6, 2022, in the

District of Columbia and elsewhere, the defendant,

**HAIDER ALI**,

with Arian Taherzadeh, and others known and unknown, did knowingly conspire, confederate, and

agree together and with each other to:

(a)      falsely assume and pretend to be officers and employees acting under the authority

of the United States, and any department, agency and officer thereof, and acted as such, and in

such pretended character demanded and obtained money, papers, documents and things of value;

that is, ALI falsely acted as if he was an authorized agent and employee of the Department of

Homeland Security and other federal and District of Columbia agencies to recruit other individuals

to fabricated law enforcement positions, and pretended to be an agent and employee of the Department of Homeland Security and the D.C. Metropolitan Police Department to obtain things of value from The Crossing apartment complex, all in violation of 18 U.S.C. § 912; and

(b)     devise and intend to devise a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises; that is, ALI used a false affiliation with Department of Homeland Security and other federal and District of Columbia agencies to obtain things of value from The Crossing apartment complex, all in violation of 18 U.S.C. § 1343.

### Purpose of the Conspiracy

10.     It was a purpose of the conspiracy for ALI to ingratiate himself with members of federal law enforcement and the defense community.

11.     It was another purpose of the conspiracy for ALI to enrich himself by obtaining property by fraudulent pretenses including through a false affiliation with the federal law enforcement community.

### Manner and Means

12.     ALI, Taherzadeh, and Subject 1, together with others known and unknown, carried out the conspiracy by the following manner and means, among others:

a.     self-identified as investigators, analysts, and agents with the USSP, and identified USSP as part of the United States Department of Homeland Security and affiliated with other federal and local law enforcement agencies;

b.     used a false affiliation with law enforcement to obtain leases as well as special access, benefits, and treatment for several luxury apartments in USSP's name;

c.   obtained paraphernalia with the insignias of and firearms, including handguns and assault rifles, used by federal law enforcement agencies;

d.   provided members of the United States Secret Service with, among other things, rent-free apartments, free garage parking spaces, iPhones, surveillance systems, a drone, a flat screen television, a computer monitor, gun safes for storing an assault rifle, a generator, and law enforcement paraphernalia; and

e.   offered to purchase and provide an assault rifle, valued at approximately $2,000, to a USSS Special Agent assigned to the protective detail of the First Lady of the United States.

### Overt Acts

13.   ALI and Taherzadeh, together with others known and unknown, carried out the conspiracy via the following acts:

14.   On November 20, 2020, USSP, Suspect 1, and Taherzadeh, on behalf of USSP, executed a lease for three units at The Crossing. The lease was executed by USSP, using the name United States Special Police 1.  USSP represented to The Crossing's agents that the company was acting under the authority of the MPD and federal law enforcement agencies, including, but not limited to, DHS and USSS.  USSP received special access, benefits, and treatment due to their alleged affiliation with federal law enforcement.

15.   In or about December 2020, Suspect 1 told the manager of the parking garage located at The Crossing that he needed five parking spots for government vehicles. The manager, who had been notified that United States Special Police Officers were to become residents of the complex, agreed to provide him with the parking spots with the understanding that the bill would be paid by the federal government.  ALI represented to the manager that he was on a special

assignment with the Secret Service and that all of the vehicles were for official federal business. ALI further represented that all of the fees would be paid for by the federal government.

16.     By May 2021, USSP's parking bill had not been paid.  In May 2021, ALI contacted the parking manager in a three-way call with "Kevin Fuller," who ALI introduced to be his direct supervisor at United States Special Police, but was in, fact, Taherzadeh.  Taherzadeh, using the false name "Kevin Fuller" assured the manager that the payment for parking would soon be arriving. USSP never paid for the parking.

17.     In May 2021, Taherzadeh recruited a person to be "deputized" through Metropolitan Police Department (MPD) as a special police officer to assist ALI and Taherzadeh in purported investigative work for the Department of Homeland Security. In May 2021, ALI provided the recruit with information and fee requirements for a shooting certification course.  In furtherance of the recruitment efforts, ALI took the recruit to a firearms range in Upper Marlboro, Maryland to shoot a qualification course and receive a certificate.

18.     On June 28, 2021, at the behest of Taherzadeh, the recruit went to the MPD headquarters in Judiciary Square to be fingerprinted but was told that he did not have an appointment.

19.     In July 2021, ALI accompanied the recruit to MPD headquarters so that the recruit could be fingerprinted.  At the main check-in desk, ALI showed an MPD employee a fraudulent law enforcement badge and was able to bypass security and the recruit was fingerprinted without being screened.

(In Violation of Title 18, United States Code, Section 371)

## COUNT TWO
### (Bank Fraud)

20.     The allegations contained in paragraphs one through five and seven of this

Indictment are re-alleged as if fully set forth herein.

21.     JPMorgan Chase Bank, N.A. (JPMC) was a financial institution within the meaning of 18 U.S.C. § 20.  Its deposits were insured by the Federal Deposit Insurance Corporation.

### The Scheme to Defraud

22.     From beginning as early as May of 2017 and continuing through March of 2021, in the District of Columbia and elsewhere, ALI participated in a scheme and artifice to defraud financial institutions, including JPMC, and to obtain any of the moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of financial institutions, including JPMC, by means of materially false and fraudulent pretenses, representations, and promises.

### The Purpose of the Scheme

23.     The purpose of the scheme to defraud was for ALI to unlawfully unrich himself by making illegitimate point of sale transactions.

### The Manner and Means of the Scheme

24.     It was part of the scheme that ALI did the following:

   a.   Assisted individuals in opening bank accounts in the name of straw businesses and obtaining debit cards;

   b.   Provided these individuals with cash to serve as an initial deposit and allow for subsequent debit card transactions;

   c.   Engaged in false and fraudulent credit and debit card transactions through a point-of-sale terminal, a device for processing card payments at retail and other sales locations;

   d.   Directed the proceeds of these false and fraudulent transactions to bank accounts

maintained and controlled by ALI or third-party account holders assisted by ALI.

e.   Instructed the accounts holders on the "debit side" of the transaction to withdraw the initial deposit while the debits were still listed as "pending."

f.   Instructed account holders on the "receiving side" of the transaction to withdraw the illegal proceeds.

g.   used and did use a false and fraudulent affiliation with DHS and other government agencies to pressure nominee account holders.

**The Execution of the Scheme**

25.   On or about September 2, 2019, and September 3, 2019, $48,300 was deposited into JPMC account numbers x8786, x8802, and x8810, collectively held in the name of a Maryland straw business.  Two of those deposits, totaling $18,800, were made at ATMs in the District of Columbia.

26.   Between on or about September 2, 2019, and September 6, 2019, ALI caused three debit card purchases against the above-referenced accounts, totaling $24,216, on a point-of-sale terminal held in the name of HSA Holdings Inc., d/b/a US Limo World Inc. in the District of Columbia.

27.   On or about September 6, 2019, $41,705 in withdrawals were made from the above-referenced JPMC accounts prior to the debit card purchases clearing.  At least one of those withdrawals, for $1,000, was made at an ATM in the District of Columbia.

28.   As a result of the above-referenced activity, on or about November 7, 2019, JPMC suffered a loss of $48,535.94 and closed the above-referenced JPMC accounts.

29.   Between in or around May of 2017 and in or around March 2021, by means of materially false and fraudulent pretenses, representations, and promises, ALI unlawfully obtained

approximately $1,624,452.91 under the custody and control of financial institutions.

(In Violation of Title 18, United States Code, Section 1344(2))

## **COUNT THREE**
### **(Unlawful Possession of a Large Capacity Ammunition Feeding Device)**

On April 6, 2022, within the District of Columbia,

**HAIDER ALI**

did possess a large capacity ammunition feeding device—that is, one (1) Glock magazine.

(In Violation of D.C. Code § 7-2506.01(b))

A TRUE BILL:

FOREPERSON

Matthew M. Graves/jph

ATTORNEY FOR THE UNITED STATES
IN AND FOR THE DISTRICT OF COLUMBIA